## TEXAS & N. O. R. CO. v. HOWELL.
### No. 4113.

Court of Civil Appeals of Texas. Beaumont.
May 20, 1943.

Roy L. Arterbury, of Houston, and Martin M. Feagin, of Livingston, for appellant.

Allen, Helm & Jacobs, of Houston, for appellee.

O'QUINN, Justice.

The plaintiff brought this suit to recover damages for personal injuries received by himself when he was struck by one of defendant's trains. At the time of the accident the plaintiff was lying in an unconscious state by the side of defendant's track with a portion of one of his legs over one of the rails. The plaintiff, a single man of forty-two years of age, was, on or about October 2, 1941, and for twenty years or more prior thereto, and had been living in Texas, working at various jobs of manual labor in different localities in the State. Following his injuries which he received in Matagorda County, Texas, he returned to Florida, his native state, and re-established his residence there after an absence of twenty years or more. He brought his suit in Polk County, Texas, under the Texas venue statute which permits a citizen of another state who has been injured in a railroad accident to bring his suit in any county in which the Railroad Company involved maintained its lines and has an agency.

The plaintiff alleged that on or about October 2, 1941, he was walking along appellant's roadbed with the implied knowledge and consent of the defendant, in accordance with the custom long established by the general public; that while so walking he stumbled against some object in the pathway, fell and became unconscious when his head struck some hard substance; that while he lay in such unconscious state one of defendant's trains struck him and severely injured him, breaking bones in both his legs below the knees and fracturing other bones in the pelvic region. The plaintiff alleged, and the jury found that the operatives of the train failed to keep a proper lookout for the presence of appellee or other persons on its track; that such failure was negligence and a proximate cause of plaintiff's injuries; that immedi-

ately prior to the time of plaintiff's injuries the operatives of defendant's train failed to keep said train under proper control; that such failure was negligence and a proximate cause of plaintiff's injuries; that prior to the collision of appellant's said train with appellee's body, plaintiff was in a position of peril; that the defendant's agents discovered and realized such fact in time to have avoided striking plaintiff by the exercise of ordinary care in the use of all the means at their command; that the defendant's agents failed to use such care and that such failure was negligence and a proximate cause of plaintiff's injuries.

The defendant denied that it was guilty of any type of negligence; that plaintiff's injuries were the result of his own negligence; that prior to his injuries plaintiff was in a state of intoxication; that while endeavoring to walk along defendant's track plaintiff was unable to maintain his footing and incapable of being mindful of the dangers of stumbling and falling and becoming unconscious so near the railroad track as to be struck by a passing train. The defendant alleged and the facts showed that its right of way and its roadbed were grown up in high grass, that such high grass extended up to and covered the ends of the ties outside of the rails; that at the time plaintiff was struck by the train he was lying outside of the end of the ties with his head pointing in the opposite direction from that of the approaching train, and that one of his legs extended over the left rail (the engineer's left), extending in the direction of the approaching train; that plaintiff was wearing khaki colored trousers, practically the same color as the high grass, and that because of such fact the defendant was unable to tell that the object which he discovered when he was approximately 340 feet from it was a man's leg; that when he first saw it he thought the object was a piece of brown paper against the rail; that when he got sufficiently near it (within 150 feet) and could tell it was a man's leg he immediately applied the emergency brakes and the train came to a normal emergency stop, but too late to avoid striking plaintiff.

The case was tried to a jury on special issues all of which were answered in favor of the plaintiff and against the defendant, and the jury awarded damages to the plaintiff in the sum of $50,000. The defendant duly filed its motion for a new trial, which was overruled, and the defendant brings this appeal.

■ The first point is that the court erred in refusing to instruct the jury to return a verdict in favor of the defendant. We overrule the point. The issue of discovered peril was plead and raised by the evidence. The jury found against appellant's contention on this point, and there is evidence in the record supporting this finding.

The second and sixth points urge: Second. "There was no evidence raising the issue of alleged failure of the operatives of defendant's train to keep a proper lookout." And sixth point: "There was no evidence raising the issue of discovered peril, and the finding of the jury on said issue is contrary to and against the great weight and preponderance of the evidence and should be set aside."

■■ Both of these points are without substantial merit. The right of way where plaintiff was injured had, under the evidence, been long, commonly and habitually used as a footpath by the public, as found by the jury on ample evidence. Plaintiff testified that he had often seen ladies, school children and people generally use the track as a right of way; that he had used and seen others use the track when section crews and trainmen would be along the track. There were no signs warning people not to use the track, and he had never known of any one being told not to use it, and that he had never been told not to use the track. The highway which ran along by the track was muddy and wet on the day of the accident. The pathway down the track was the shortest route for plaintiff from town to his work. The fact that the right of way where plaintiff was injured had, under the evidence, been long, commonly and habitually used as a footpath by the public establishes beyond question that such use was habitually made by the public for such purpose and that this use was well known to defendant. "It is well settled by the decisions of this * * * state that if a portion of the roadbed of a railroad company has been * * * habitually used for a long time by the public as a footpath, with the knowledge and acquiescence * * * of the company, it is considered as having licensed the public to use such portion of its roadbed for that purpose." Gulf, C. & S. F. Ry. Co. v. Matthews, 99 Tex. 160, 88 S.W. 192, 197; St.

Louis & Texas Ry. Co. v. Crosnoe, 72 Tex. 79, 10 S.W. 342. The track, where the accident occurred, was level, straight and unobstructed for from one to four miles; the injuries occurred at about noon, on a clear bright day, and on a track familiar to the operatives of the train which was just leaving a station for a run with which all the employees were familiar. There is much evidence pro and con in the record and we think that not only was the issue raised by the evidence, but that the verdict of the jury thereon has ample support in the record.

Appellant's point that appellee was guilty of negligence in getting himself in a state of intoxication and then attempting to walk down the railroad track in such condition is overruled. The issue of contributory negligence on this allegation of appellant was submitted to the jury and it acquitted appellant of the charge. The evidence supports the jury's verdict.

The judgment will have to be reversed and remanded because of the verdict being excessive. Appellee was struck by the front end of the engine or the "cow catcher," and received numerous and severe injuries. He asked for damages in the sum of $86,750, and the jury assessed his damages at $50,000. He was 42 years of age, in robust health, weighed 178 pounds and had led an active life of labor. He was a man of meager education, having reached only the third grade in school. He testified that at the time he was injured he was making "around four dollars and fifty cents a day" when he worked. He had a life expectancy of some thirty years. His physical condition was not one of complete recovery at the time of the trial, but indicated largely one of continued physical suffering and loss of physical power to labor with an indefinite time of reasonable recovery, if at all any reasonable percentage of recovery.

There was much confusion and considerable bickering in the trial of the case which was calculated to produce uncertainty and prejudice in the minds of the jury, and which probably to some extent affected the view of the individual jurors leaving their minds not altogether free from the influence of the manner and incidents of the trial, at least to such extent as to render it uncertain, at least to our minds, as to whether, if so to what amount a remand of the judgment with remittitur would be just and equitable to the parties. That being so, we conclude that the judgment should be reversed and remanded for another trial, and it is so ordered.

Reversed and remanded.

COMBS, J., concurs.